UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE PRANDIN DIRECT PURCHASER ANTITRUST LITIGATION | C.A. No. 2:10-cv-12141-AC-DAS |
| | Judge Avern Cohn |
| THIS DOCUMENT RELATES TO: | Magistrate Judge Donald A. Scheer |
| ALL ACTIONS | |

**ORDER AND FINAL JUDGMENT**
**APPROVING CLASS ACTION SETTLEMENT**

**WHEREAS,** Plaintiffs American Sales Company, LLC and Rochester Drug Co-Operative, Inc. ("Plaintiffs") executed a Settlement Agreement with Defendants Novo Nordisk A/S and Novo Nordisk, Inc. ("Defendants") to fully resolve this antitrust class action case;[1]

**WHEREAS,** on October 2, 2014, this Court granted preliminary approval of the proposed settlement;[2]

**WHEREAS,** on November 18, 2014, Plaintiffs moved for an award of attorneys' fees, reimbursement of expenses, and payment of incentive awards to the class representatives;

**WHEREAS,** on December 16, 2014, Plaintiffs moved for an order of final approval of the Settlement of this action;

---

[1] Settlement Agreement (Doc. No. 58-2).
[2] Order, October 2, 2014 (Doc. No. 64) ¶ 4.

**WHEREAS,** on January 14, 2014, the Court held a fairness hearing in this action;

**NOW, THEREFORE,** this 20th day of January, 2015, upon the motions of Plaintiffs and all papers submitted and proceeding held herein, **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

### I.    Jurisdiction

1.    This Court has personal jurisdiction over the Plaintiffs, the class, and Defendants, and subject matter jurisdiction over the action.

### II.    Certification of the Class

2.    The Court previously certified for settlement purposes the following class:  All persons and entities in the United States and its Territories who purchased Prandin directly from Defendants from May 6, 2009 until the June 30, 2014.  Excluded from the Class are Defendants and their parents, employees, subsidiaries, and affiliates, and all federal governmental entities.[3]

### III.    Notice to the Class

3.    The Court previously approved the form and method of notice employed here.  The notice constituted the most effective and best notice practicable under the circumstances and was due and sufficient notice for all other

---

[3] *Id.* ¶ 2.

purposes to all potential class members entitled to receive notice.[4]

4.       Class Counsel, through court-appointed Settlement Administrator Rust Consulting, Inc., caused notice to be provided to all class members in full compliance with the requirements of Fed. R. Civ. P. 23 and due process by first class mail on or about October 17, 2014.  The deadline for objecting or requesting exclusion was December 1, 2014.  No class member has objected or requested exclusion from the class.[5]

### IV.   Final Approval of the Settlement

5.       The Settlement resulted from the parties' detailed investigation of the facts and substantial motion practice.  It was reached only after arm's-length negotiations, undertaken in good faith by Class Counsel and counsel for Defendants.

6.       The Settlement provides a recovery for the class in the amount of $19 million in cash.

7.       The Court has evaluated the proposed settlement under Rule 23 of the Federal Rules of Civil Procedure, as well as relevant Sixth Circuit jurisprudence, including the factors set forth in *Int'l Union, United Auto., Aerospace & Agric.*

---

[4] *Id.* ¶ 5.

[5] As of the date of Plaintiffs' final approval submission, no class member had objected or requested exclusion.  Declaration of Kathy Larson of Rust Consulting, Inc. ("Larson Decl.") at ¶ 3.  Class Counsel confirmed at the fairness hearing that no such requests had been received since then.

*Implement Workers of Am. (UAW) v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), finding as follows:

      a.    *The likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement.* "The fairness of each settlement turns in large part on the strength of the parties' legal dispute."[6] When considering the fairness of a class action settlement, courts assess it "with regard to a 'range of reasonableness,' which 'recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"[7] This case involved numerous, complex legal issues and Plaintiffs' success was not certain. The risk of the class ultimately receiving nothing was substantial. "All litigation poses risks of course, but antitrust litigation especially so."[8] These risks must be weighed against the settlement consideration: $19 million in cash, which is plainly valuable to the class members. Weighing the risk and uncertainty of litigation against the settlement benefits tilts the scale toward approval.

      b.    *The complexity, expense, and likely duration of further*

---

[6] *In re S.E. Milk Antitrust Litig.*, 2:07-CV-208, 2013 WL 2155379, at *3 (E.D. Tenn. May 17, 2013).

[7] *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 WL 6209188, at *10 (E.D. Mich. Dec. 13, 2011).

[8] *In re Southeastern Milk*, 2013 WL 2155379, at *4.

*litigation.* "Settlements should represent 'a compromise which has been reached after the risks, expense and delay of further litigation have been assessed.'"[9] "[T]he prospect of a trial necessarily involves the risk that Plaintiffs would obtain little or no recovery."[10] This is particularly true for class actions, which are "inherently complex."[11] "[S]ettlement avoids the costs, delays, and multitude of other problems associated with them."[12] In the absence of this settlement, litigation would have continued for years at significant additional expense. This settlement ensures that class members will receive their recoveries without further delay and without incurring further expense.

   c. *The opinions of Class Counsel and class representatives.* In deciding whether a proposed settlement warrants approval, Class Counsel's judgment "that the settlement is in the best interest of the Class 'is entitled to significant weight, and supports the fairness of the class settlement.'"[13]

---

[9] *In re Cardizem CD Antitrust Litigation*, 218 F.R.D. 508, 523 (E.D. Mich. 2003) (quoting *Williams v. Vukovich,* 720 F. 2d 909, 921-23 (6th Cir. 1983)).
[10] *Id.*
[11] *In re Southeastern Milk*, 2013 WL 2155379, at *5 (citing *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001)).
[12] *Id.*
[13] *In re Southeastern Milk*, 2013 WL 2155379, at *5; *In re Packaged Ice Antitrust Litig.,* Case No. 08-MD-01952, 2011 WL 717519, at *11 (E.D. Mich. Feb. 22, 2011) (quoting *Sheick v. Auto. Component Carrier LLC*, Case No. 2:09-cv-14429, 2010 WL 4136958, at *18 (E.D. Mich. Oct. 18, 2010); *In re Packaged Ice*, 2011 WL 6209188, at *12.

Class Counsel have extensive experience in handling pharmaceutical antitrust and other complex litigation.[14]  They negotiated this settlement at arm's-length over a period of months with well-respected and experienced counsel for Defendants.  Each class representative also has experience in litigating pharmaceutical antitrust cases and evaluated the strength of the settlement, finding that it was fair and reasonable.

    d.   *The amount of discovery engaged in by the parties*.  Plaintiffs undertook a substantial investigation of the case.  Ultimately, Plaintiffs reviewed over 300,000 pages of documents of Caraco documents produced pursuant to subpoena.[15]  Class Counsel's thorough analysis of the documents fully informed the decision to enter into the settlement and Class Counsel had sufficient information to allow them to evaluate the fairness of the settlement.[16]

    e.   *The reaction of absent class members*.  The absent class members also support the settlement.  After receiving individual, mailed notice, no member of the class objected to the settlement and no member of

---

[14] *See* Declaration of Co-Lead Counsel in Support of Plaintiffs' Motion for Preliminary Approval ("Co-Lead Counsel Decl.") dated September 12, 2014 (Doc. No. 66) ¶¶ 27-31.

[15] *Id.* ¶¶ 19, 21.

[16] *In re Southeastern Milk*, 2013 WL 2155379, at *5 ("Counsel's recommendation and that of the class representatives is clearly supported by an incredibly extensive base of data and this gives added weight and deference to the judgment of trial counsel and the class representatives.").

the class opted out.[17]  Counsel for each of the three largest wholesalers –

Cardinal Health, Inc., AmerisourceBergen Corporation, and McKesson

Corporation – have written to the Court directly and affirmatively support

the Settlement.  "[T]he scarcity of objections-relative to the number of class

members overall-indicates broad support for the settlement among Class

Members."[18]

       f.   *The good faith of settlement negotiations.*  There is a

presumption that settlement negotiations were conducted in good faith and

that the resulting agreement was reached without collusion, unless there is

evidence to the contrary.[19]  Here, settlement came after years of hard-fought

litigation.  Class Counsel have extensive experience in proper management

of pharmaceutical antitrust class actions and they negotiated this settlement

at arm's-length with Defendants' counsel.

       g.   *The public interest.*  "[T]here is a strong public interest in

---

[17] *See* Larson Decl. ¶7.

[18] *In re Southeastern Milk*, 2013 WL 2155379, at *6; *Sheick*, 2010 WL 4136958, at
*22; *In re Cardizem*, 218 F.R.D. at 527 ("[i]f only a small number of objections are
received, that fact can be viewed as indicative of the adequacy of the settlement").

[19] *In re Southeastern Milk*, 2013 WL 2155379, at *6; *Telectronics*, 137 F. Supp. 2d
at 1018 (citing Herbert Newberg & Alba Conte, *Newberg on Class Actions* §11.51
(3d ed. 1992) ("Courts respect the integrity of counsel and presume the absence of
fraud or collusion in negotiating the settlement, unless evidence to the contrary is
offered."); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of
Am. (UAW) v. Ford Motor Co.*, Case Nos. 05-74730, 06-10331, 2006 WL
1984363, at *26 (E.D. Mich. July 13, 2006); *Sheick*, 2010 WL 4136958, at **19-
20.

encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources."[20]  The settlement also "ends potentially long and protracted litigation among these parties and frees the Court's valuable judicial resources."[21]  "Society's interests are clearly furthered by the private prosecution of civil cases which further important public policy goals, such as vigorous competition by marketplace competitors."[22]  This litigation, which sought to hold Defendants accountable for their allegedly anticompetitive scheme, serves these public policy goals.  The resolution of the case through settlement further benefits the public by providing prompt compensation to those directly injured by Defendants' alleged actions.

8.    The Court previously preliminarily approved the plan of distribution to be employed here.  The plan of distribution of the Settlement Fund (Doc. No. 58-5) calls for distribution of the settlement amount, net of attorneys' fees and expenses, incentive awards to the class representatives, and other costs as shall be

---

[20] *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs. Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992)).  *Accord In re Packaged Ice*, 2011 WL 6209188, at *15.
[21] *In re Southeastern Milk*, 2013 WL 2155387, at *7(citing *In re Broadwing, Inc., ERISA Litig.*, 252 F.R.D. 369, 376 (S.D. Ohio 2006)).
[22] *Id.* at *5 (citing *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983) ("This court has emphasized the importance of the private action as a means of furthering the policy goals of certain federal regulatory statutes, including the federal antitrust laws.")).  *See also Cardizem*, 218 F.R.D. at 534 ("Society also benefits from the prosecution and settlement of private antitrust litigation.").

allowed by the Court, to all class members pro rata based on the total units of Prandin purchased directly from Defendants during the class period. The proposed distribution plan, attached hereto as Exhibit A, satisfies the requirements of Fed. R. Civ. P. 23(e) and due process, is fair, reasonable and adequate, and is therefore are finally approved.

9.    Upon consideration of the above factors and the record in this case, the Settlement Agreement and each of its terms are finally approved as fair, reasonable, and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and the parties are directed to consummate the settlement according to its terms.

**V.    Award of attorneys' fees, reimbursement of expenses, and payment of incentive awards to the class representatives.**

10.    The Settlement confers a substantial benefit on the class and the value is immediate and readily quantifiable.

11.    Class Counsel vigorously and effectively pursued class members' claims before this Court.

12.    The Settlement Fund is a "common fund," and courts have long recognized that a lawyer who recovers such a fund is entitled to a reasonable attorneys' fee from that fund as a whole.[23]

---

[23] *See Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *Blum v. Stenson*, 465 U.S. 886, 900 n. 16 (1984).

13.     The percentage-of-the-fund method is the proper method to compensate Class Counsel in this litigation.  The Court concurs with the observations made by other courts, such as: the lodestar method is cumbersome; the percentage-of-the-fund approach more accurately reflects the result achieved; and the percentage-of-the-fund approach has the virtue of reducing the incentive for plaintiffs' attorneys to over-litigate or "churn" cases.[24]

14.     The Court recognizes that the trend in "common fund cases has been toward use of the percentage method."[25]

15.     The Court finds that the requested counsel fee of one-third of the settlement fund is fair and reasonable and fully justified.  The Court finds it is within the range of fees ordinarily awarded.  The Court also finds that the award is within the range of fee awards in settlements of this type.[26]

---

[24] *In re Southeastern Milk Antitrust Litig.,* 2013 WL 2155387, at *2; *In re F&M Distrib., Inc. Sec. Litig.,* Case No. 95-CV-71778-DT, 1999 U.S. Dist. LEXIS 11090, at *8 (E.D. Mich. June 29, 1999).

[25] *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003) (courts in the Sixth Circuit have "indicated a preference for the percentage-of-the-fund method in common fund cases.").

[26] *In re Skelaxin Antitrust Litig.,* No. 12-cv-83, Doc. 747 (E.D. Tenn. June 30, 2014) (in direct purchaser pharmaceutical antitrust action, awarding a one-third fee on a $73 million settlement recovery); *In re Southeastern Milk,* 2013 WL 2155387, at *3 ("attorneys' fees requested represent one-third of the settlement fund. Although the total fee requested is a very large amount . . . the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit."); *In re Tricor Direct Purchaser Antitrust Litig.,* No. 05–340, Order and Final Judgment Approving Settlement, Awarding Attorneys' Fees and Expenses, Awarding Representative Plaintiff

16.     The Court looked at the following factors to determine the

reasonableness of the percentage:

- the value of the benefit rendered to the plaintiff class;
- the value of the services on an hourly basis;
- whether the services were undertaken on a contingent fee basis;
- society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
- the complexity of the litigation; and
- the professional skill and standing of counsel involved on both sides.

After examination of these factors, the Court finds that these factors support

the requested award.[27]

17.     The results achieved in this case fully support the requested fee.  The

Settlement in this case provides a clear benefit to the class: an immediate and

certain payment, divided among a limited national class of direct purchasers, of

$19 million in cash, less attorneys' fees, expenses, administration costs, and

awards to the named Plaintiffs.

18.     A one-third fee recovery in this matter would equate to a multiplier

of 3.01 to the lodestar incurred through October 31, 2014.  This level multiplier is

---

Incentive Awards, Approving Plan of Allocation, and Ordering Dismissal as to All Defendants at ¶ 11 (D. Del. Apr. 23, 2009) (approving one-third fee, equaling approximately $83 million); *In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2011 U.S. Dist. LEXIS 150427, at **76-77 ( E.D. Mich. Dec. 13, 2011) ("Importantly, the requested award of close to 30% appears to be a fairly well-accepted ratio in cases of this type and generally in complex class actions.").
[27] *Moulton v. United States Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (*quoting Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996)).

reasonable in light of what has been routinely accepted as fair and reasonable in complex matters such as this one.[28]  Multipliers much higher than the one requested here are also commonplace in complex pharmaceutical antitrust class actions.[29]

19.     Class Counsel bore significant risks.  In particular, Plaintiffs here faced substantial obstacles in attempting to establish antitrust liability, causation, and damages.  The Court or the jury could have found that Caraco's inability to come to market, notwithstanding Novo's alleged conduct, prevented Plaintiffs from proving causation and damages.[30]

20.     Antitrust class actions are inherently complex.  The legal and factual

---

[28] *See, e.g., Bailey v. AK Steel Corp.*, Case No. 1:06-cv-468, 2008 U.S. Dist. LEXIS 18838, at *7 (S.D. Ohio Feb. 28, 2008) (awarding multiplier of 3.04, noting that "[c]ourts typically ... increas[e] the lodestar amount by a multiple of several times itself" and identifying a "normal range of between two and five"); *Manners v. American General Life Ins. Co.*, Civil Action No. 3-98-0266, 1999 U.S. Dist. LEXIS 22880, at *93 (M.D. Tenn. Aug 11, 1999) (3.8 multiplier); *In re Cardinal Health Sec. Litig.*, 528 F. Supp. 2d 752, 770 (S.D. Ohio 2007) (multiplier of 5.9).

[29] *See, e.g.*, *Cardizem*, 218 F.R.D. at 533 (noting that direct purchaser class plaintiffs received a fee award that equated to a lodestar multiplier of 3.7).  *See also Tricor,* No. 05–340, Order and Final Judgment Approving Settlement, Awarding Attorneys' Fees and Expenses, Awarding Representative Plaintiff Incentive Awards, Approving Plan of Allocation, and Ordering Dismissal as to All Defendants at ¶ 11 (approving lodestar multiplier of 3.93); *Meijer, Inc. v. 3M*, No. 04-5871, 2006 WL 2382718 (E.D. Pa Aug. 14, 2006), at *24 (approving a percentage fee award that translated to a 4.77 multiplier in case that settled after one year).

[30] *See Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 859-61 (D.C. Cir. 2008) (generic manufacturer Andrx was experiencing concurrent manufacturing problems, and the FDA did not approve Andrx's ANDA until one year after Biovail withdrew its claim that that the patent covered Tiazac, proving fatal to the antitrust claim).

issues are complicated and highly uncertain in outcome.  This case was no

exception.  As the court noted in *Packaged Ice*, "[t]his antitrust litigation, like all

litigation of its species, promises to be extremely complex and time intensive and

there is no question that if settlement fails, the Defendants will mount a strong

defense."[31]

21.     Class Counsel are qualified in this complex area and performed well

during the case.  Several of these firms have also been actively engaged in antitrust

litigation in the pharmaceutical industry for well over a decade.  Class Counsel

demonstrated this experience and skill in the efficient and effective prosecution of

this action, and in achieving a relatively quick resolution.  As one court observed,

"[t]the quality of work performed in a case that settles before trial is best measured

by the benefit obtained."[32]

22.     Counsel for the three largest wholesalers, together accounting for the

---

[31] 2011 U.S. Dist. LEXIS 150427, at *76 (citing *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 639 (E.D. Pa. 2003)).  *See also Cardizem*, 218 F.R.D. at 533 ("Antitrust class actions are inherently complex . . . this extraordinarily complex case raised a multitude of difficult issues in the areas of antitrust law, patent law, and laws governing pharmaceutical drugs.").

[32] *Behrens v. Wometco Ent., Inc.*, 118 F.R.D 534, 547-48 (S.D. Fla. 1988).  *See also In re Delphi Corp. Securities, Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 504 (E.D. Mich. 2008) ("The ability of Lead Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonableness of the fee award requested."), *F&M Distrib.,* 1999 U.S. Dist. LEXIS 11090, at *19 ("The skill and competence of the attorneys for the plaintiffs was evident, especially when viewed on the basis of the results that they obtained in this case, while the excellent advocacy skills of the defense counsel . . . were equally evident").

majority of purchases subject to the settlement, have written the Court directly affirmatively supporting Class Counsel's fee and expense request.

23.     The Court, therefore, awards Class Counsel attorneys' fees in the amount of $6,333,000.00 (six million, three hundred thirty-three thousand dollars), *i.e.* one third of the $19 million Settlement Fund, as attorneys' fees, to be allocated among Class Counsel, as well as approving reimbursement of $147,975.82 in expenses, which expenses were reasonable and necessary to the representation of the Class.

24.     Numerous courts have found it appropriate to specially reward named class plaintiffs for the benefits they have conferred.  As the court noted in *Lonardo v. Travelers Indemnity Company*:

> Courts within the Sixth Circuit…recognize that, in common fund cases and where the settlement agreement provides for incentive awards, class representatives who have had extensive involvement in a class action litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone.[33]

---

[33] 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010).  *See also In re Skelaxin Antitrust Litigation,* No. 12-cv-83, Doc. 747 (E.D. Tenn. June 30, 2014) (in direct purchaser pharmaceutical antitrust action, awarding a $50,000 incentive award to each class representative); *Cardizem*, 218 F.R.D. at 535-36 (awarding $75,000 each to the corporate class representatives); *Meijer, Inc., et al. v. Barr Pharma., Inc.,* C.A. No. 05-2195, Order and Final Judgment, at ¶ 17 (D. D.C. Apr. 20, 2009) (awarding $50,000 to five class representatives – a total of $250,000); *Tricor,* No. 05–340, Order and Final Judgment Approving Settlement, Awarding Attorneys' Fees and Expenses, Awarding Representative Plaintiff Incentive Awards, Approving Plan of Allocation, and Ordering Dismissal as to All Defendants at ¶ 14 (awarding $50,000 to each of three class representatives).

25.     The Class Representatives American Sales Company, LLC and Rochester Drug Co-Operative, Inc. diligently and completely fulfilled their obligations to the Class.  They stepped forward and pursued the Class's interests by filing suit on behalf of the members of the Class and undertaking the responsibilities attendant upon serving as a named plaintiff.  The Class Representatives also participated in the settlement.

26.     The Class Representatives are each granted an award of $50,000 each, payable from the Settlement Fund, for their role in bringing about this recovery on behalf of the Class.

### VI.     Entry of Final Judgment Binding on the Class and Dismissal of the Case With Prejudice

27.     No class member timely and validly requested exclusion from the class.  All class members, therefore, are and will forever remain, bound by this Order and Final Judgment.

28.     This class action is dismissed with prejudice and in its entirety, on the merits, as to Defendants.  This dismissal shall not affect, in any way, Plaintiffs' or class members' rights to pursue any claims other than those released, as set forth in the Settlement Agreement.

29.     Plaintiffs and all members of the class are permanently enjoined and barred from instituting, commencing, or prosecuting any action or other

proceeding asserting any released claims, as set forth in the Settlement Agreement,

against any released party, either directly, individually, representatively,

derivatively, or in any other capacity, by whatever means, in any local, state, or

federal court, or in any agency or other authority or arbitral or other forum

wherever located.

30.     In no event shall Defendants be obligated to pay anything in addition

to the $19 million settlement fund created pursuant to the Settlement Agreement,

including without limitation, attorneys' fees, awards to the named class

representatives for their efforts on behalf of the class, escrow costs, taxes, or any

other cost or expense arising from or to be paid as part of the settlement.

31.     This Order and Final Judgment does not settle or compromise any

claims by Plaintiffs or the class against persons or entities other than the released

parties, as set forth in the Settlement Agreement.  All rights against any other

person or entity are specifically reserved.

32.     The settlement, this Order and Final Judgment, and/or any and all

negotiations, documents, and discussions associated with it shall be without

prejudice to the rights of any party, shall not deemed or construed to be an

admission or evidence of any kind, including without limitation of any violation of

any statute or law or any liability or wrongdoing by Defendants or an

acknowledgement of defenses by Plaintiffs, or the truth of any of the claims or

allegations contained in any pleading in this case or the standing of any party to assert claims against Defendants or defenses Plaintiffs, and evidence thereof shall not be discoverable or used directly or indirectly, by any party or any third party, in any way, whether in this class action or in any other action or proceeding of any kind whatsoever, civil, criminal or otherwise, before any court, tribunal, administrative agency, regulatory body or other similar entity, provided, however, that nothing contained herein shall preclude use of the Settlement Agreement or this Order and Final Judgment in any proceeding to enforce the Settlement Agreement.

33.     Without affecting the finality of this Order and Final Judgment, this Court retains exclusive and continuing jurisdiction over the Settlement and the Settlement Agreement, including the Settlement Fund and the administration, consummation, and interpretation of the settlement and Settlement Agreement.

34.     The escrow account established by the parties has been approved by the Court.[34]  Defendants have deposited $19 million as the settlement fund into that escrow account pursuant to the Settlement Agreement, and that escrow fund, including any accrued interest, is approved as a Qualified Settlement Fund pursuant to Internal Revenue Code Section 468B and the Treasury Regulations promulgated thereunder.

---

[34] Order, October 2, 2014, ¶ 11.

35.     Pursuant to Federal Rule of Civil Procedure 54, the Court finds that there is no just reason for delay and hereby directs the entry of final judgment of dismissal forthwith as to Defendants.


SO ORDERED this 20th day of January, 2015


S/ Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE[*]




I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 20, 2015, by electronic and/or ordinary mail.


S/Sakne Chami
Case Manager, (313) 234-5160

---

[*]This Order and Final Judgment Approving Class Action Settlement was prepared by Class Counsel and signed after review by the Court.

# Exhibit A

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE PRANDIN DIRECT PURCHASER ANTITRUST LITIGATION | C.A. No. 2:10-cv-12141-AC-DAS<br><br>Judge Avern Cohn |
| THIS DOCUMENT RELATES TO:<br><br>ALL ACTIONS | Magistrate Judge Donald A. Scheer |

## PLAN OF DISTRIBUTION

Plaintiffs propose to distribute the net settlement fund (*i.e.*, the gross settlement fund, net of any attorneys' fees, reimbursed litigation expenses, class representative incentive awards, and/or settlement administration costs approved by the Court), to class members *pro rata* based on each class member's aggregate share of the total class purchases of Prandin during the class period.  Plaintiffs propose the following schedule to govern the distribution process:

| | |
|---|---|
| 15 days after entry of final approval order | Settlement administrator will mail claim forms to all class members.  The claims forms will include estimated calculations by the settlement administrator of each class member's qualifying purchases, in units, during the class period, based on the Prandin sales data produced by Defendants. |

| 45 days after entry of final approval order | Class members' deadline to submit executed claim forms to the settlement administrator.  Class members must either accept the settlement administrator's estimated calculation or provide their Prandin purchase data proving a revised aggregate purchase amount. |
|---|---|
| 90 days after entry of final approval order | Class counsel will submit to the Court a motion for distribution of the net settlement fund supported by a declaration of settlement administrator verifying compliance with the plan of distribution. |

Each class member's distribution amount will be calculated by the settlement administrator, with the assistance of plaintiff's economist if necessary, as follows: for each class member that submits a claim, the settlement administrator will: (a) sum the total combined purchases made by each class member during the class period; (b) calculate each class member's percentage share of purchases of Prandin  by dividing each class member's total qualifying purchases in units by the total combined qualifying purchases (in units) made by all class members combined; and then (c) multiply each class member's percentage share of purchases of Prandin by the total dollars in the net settlement fund.

To ensure uniformity, the settlement administrator will use the transactional sales database produced by Defendants during the litigation to make a calculated estimate of each class member's purchases of Prandin during the class period. Notwithstanding the foregoing, any class member may provide the claim

2

administrator with data or information concerning its Prandin purchases that may supplement or correct purchase information drawn from the transactional sales database produced by Defendants during the litigation.

For illustrative purposes, take a class member for whom the manufacturers' sales data combined showed that it purchased one million units of Prandin during the class period. The settlement administrator would first take that figure (one million units) and divide it by the total amount of Prandin in units purchased during the class period by all class members to get that class member's percentage share of the total. For these purposes, assume that all class members combined bought one hundred (100) million units of Prandin during the class period. Thus, in this example, the class member's percentage share of purchases of Prandin would be one million units divided by one hundred (100) million units, or 1%. That class member's share would then be multiplied by the net settlement fund allocable to all class members to yield the class member's net distribution amount in dollars. If the net settlement fund were $10 million, in this example, the class member would receive 1% of $10 million or $100,000.

Plaintiffs respectfully submit that the proposed plan of distribution is fair, reasonable, and adequate, and should be approved.